UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CHEMRISK, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>MARK J. CHAPPEL, an individual, CHRISTOPHER MARWOOD, an individual, and HUGH SCOBIE, an individual,<br><br>Defendants. | Case No: C 10-05766 SBA<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Docket 8, 17 |

Plaintiff ChemRisk, LLC ("ChemRisk"), a California limited liability company, filed the instant diversity jurisdiction action against Canadian citizens, Mark J. Chappel ("Chappel"), Christopher Marwood ("Marwood") and Hugh Scobie ("Scobie"). ChemRisk alleges that Defendants, who are former employees of ChemRisk's Canadian affiliate, ChemRisk, ULC, ("ChemRisk Canada"), violated their respective employment and confidentiality agreements by starting a competing consulting business in Canada. The parties are presently before the Court on Marwood and Scobie's Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6). Dkt. 17. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS the motion to dismiss for lack of personal jurisdiction and DENIES as moot Defendants' motion for dismiss for failure to state a claim. The Court, in its

discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. BACKGROUND

### A. FACTUAL SUMMARY

ChemRisk is a San Francisco-based limited liability company organized under California law.  Compl. ¶ 4.  The company provides scientific consulting services in the areas of environmental risk assessment and toxicology.  Id. ¶ 9.  In the Spring or Summer of 2008, Defendants Scobie, Marwood and Chappel, all of whom are Canadian residents and who live in the province of Ontario, approached ChemRisk about investing in a scientific consulting office to be located in Canada.  Id. ¶ 11.  The parties reached an agreement under which Defendants would assume responsibility for setting up a ChemRisk office in Guelph, Ontario.  See, e.g., Marwood Decl. Ex. A at 1-2, Dkt. 18-1.  Among other things, Defendants were to secure office space, hire staff and develop a long-term business plan for the Canadian office.  Id.  Each of the Defendants was to become a senior-level employee of a newly-formed Canadian entity, ChemRisk Canada, and assume the position of "Supervising Health Scientist."  Id.[1]  These and other terms of Defendants' employment were memorialized in offer letters, dated July 23, 2009, which were countersigned by Defendants.[2]  Defendants also agreed to be bound by ChemRisk's Employee Proprietary Information Agreement, which incorporates the Company's Conflict of Interest Guidelines.  Compl. ¶ 12.

---

[1] Defendants contend that they were employed by ChemRisk Canada, not ChemRisk.  Defs.' Mot. at 3, Dkt. 17.  ChemRisk counters that ChemRisk Canada "was created for the sole purpose of obtaining a Canadian Tax ID Number to set up an ADP payroll account," and that Defendants' contractual obligations run to ChemRisk.  Garavaglia Decl. ¶ 2, Dkt. 24; Pl.'s Opp'n at 2.  Both parties are at least partially correct.  The offer letters expressly state that Defendants' positions were to be with ChemRisk Canada, as opposed to ChemRisk.  At the same time, Defendants executed Employee Proprietary Information Agreements with ChemRisk.

[2] Scobie countersigned his offer letter on July 24, 2009, and Marwood and Chappel countersigned their letters on July 26, 2009.  Id.; Scobie Decl. Ex. A, Dkt. 19-1; Chappel Mot. Ex. A, Dkt. 8.

During the course of Defendants' employment, ChemRisk learned that Defendants were engaged in conduct that allegedly "violated their contractual, legal and ethical obligations to ChemRisk." Id. ¶ 16.  Among other things, ChemRisk alleges that Defendants engaged in the following "violations":

    a.    Arranging for and performing consulting services for clients in direct competition with ChemRisk;

    b.    Utilizing ChemRisk's confidential business information, including client contacts and business strategy, to establish a competing business venture known as NovaTox, Inc.;

    c.    Exploiting ChemRisk's substantial cash contribution of approximately $400,000 to develop business that competes with ChemRisk;

    d.    Relying on ChemRisk business name and substantial goodwill to develop their own business to their exclusive benefit and to the direct detriment of ChemRisk.

Compl. ¶ 16.

Defendants have since left ChemRisk Canada, and are now operating a competing entity known as NovaTox, Inc., ("NovaTox"). Id. ¶ 17.  According to ChemRisk, Defendants' departure left "ChemRisk's Guelph office without a means to service existing clients," and as a result, "all of ChemRisk's clients associated with its Guelph office either transferred their business to NovaTox or left ChemRisk to be serviced by other competing consulting firms." Id.  ChemRisk claims that as a result of Defendants' conduct, it has "lost its entire investment, clientele, and prospective business opportunities associated with its Guelph office[.]" Id.

    **B.**    **PROCEDURAL HISTORY**

On December 10, 2010, ChemRisk filed the instant action against Scobie, Marwood and Chappel alleging four state law causes of action for: (1) breach of contract; (2) common law unfair competition; (3) fraud; and (4) negligent misrepresentation. Dkt. 1. On January 20, 2011, the Clerk, at ChemRisk's request, entered default against Chappel. Dkt. 7.  Two days later, all Defendants jointly filed a pro se motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and improper venue under Rule 12(b)(3).

Following ChemRisk's declination to proceed before a Magistrate Judge, the action was reassigned to this Court on January 26, 2011. Dkt. 12, 14. On February 14, 2011, Scobie and Marwood, now represented by counsel, filed a motion to dismiss under Rule 12(b)(2) and Rule 12(b)(6). No counsel has appeared on behalf of Chappel.

## II. LEGAL STANDARD

District courts have the authority to dismiss an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate." Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1108 (9th Cir. 2002). Plaintiff must satisfy this burden with respect to each defendant. Brainerd v. Univ. of Alberta, 873 F.2d 1257, 1258 (9th Cir. 1989). "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." See Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001). "When a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Id. (citing Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)). Dismissal is the proper remedy where the plaintiff has failed to make such a showing. Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996).

## III. DISCUSSION

### A. OVERVIEW

Personal jurisdiction over a nonresident defendant is analyzed under a two-part test. Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir. 1994). First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Id. Second, the exercise of jurisdiction must comport with federal due process. Id. at 1404-05. Because California's long-arm statute, Cal. Civ. Proc. Code § 410.10, extends jurisdiction to the limit of federal due process, the Court need only analyze the second part of the test. See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002).

1  Due process requires that a defendant have sufficient "minimum contacts" with the forum state. Int'l Shoe Corp. v. Washington, 326 U.S. 310, 316 (1945); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). The minimum contacts must be such that a defendant "should reasonably anticipate being haled into court" in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). Under a minimum contacts analysis, jurisdiction may either be "specific" or "general." Doe, 248 F.3d at 923. Specific jurisdiction exists "where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." Glencore, 284 F.3d at 1123. In contrast, general jurisdiction depends on the defendant's "substantial, continuous and systematic" contacts with the forum, "even if the suit concerns matter not arising out of his contacts with the forum." Id.

Here, ChemRisk does not allege that general jurisdiction exists over Defendants. Def.'s Opp'n at 5, Dkt. 23. Therefore, the issue presented for resolution is whether ChemRisk has met its burden of presenting a prima facie case of specific jurisdiction.

### B. SPECIFIC JURISDICTION

The Ninth Circuit applies a three-prong test for analyzing claims of specific jurisdiction:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice.

Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (quoting in part Burger King, 471 U.S. at 476-78). The requisite showing of personal jurisdiction is *heightened* where, as here, the defendants are foreign domiciles. Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th

- 5 -

Cir. 1993) ("litigation against an alien defendant requires a higher jurisdictional barrier than litigation against a citizen from a sister state."); see also Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 115 (1987) ("[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.").

### 1. Purposeful Availment/Direction

"Purposeful direction" and "purposeful availment" are distinct tests, with the former generally applied to tort claims and the latter to contract claims. Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010). *Purposeful direction* "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Dole, 303 F.3d at 1111. On the other hand, *purposeful availment* "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there," Schwarzenegger, 374 F.3d at 802, or other "affirmative conduct which allows or promotes the transaction of business within the forum state," Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988). By "purposefully avail[ing] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws, ... a defendant must—as a quid pro quo— submit to the burdens of litigation in that forum." Schwarzenegger, 374 F.3d at 802 (internal quotations and citations omitted).

In the instant case, there is no allegation or evidence that Defendants engaged in any activities or transacted business aimed at or within California.[3] To the contrary, the objective of the parties' contractual relationship was for Defendants to establish a

---

[3] Although Defendants' moving papers appropriately recognized that the Complaint alleges both contract and tort causes of action, and correspondingly presents arguments under both the purposeful availment and purposeful direction tests, Defs.' Mot. at 6-8, ChemRisk's opposition is based solely on the issue of purposeful availment, Pl.'s Opp'n at 5. Since ChemRisk bears the burden of demonstrating both purposeful availment and direction, the Court construes ChemRisk's lack of argument as a concession that Defendants did not commit any intentional acts expressly aimed at California which caused harm that they knew was likely to be suffered in California. See Dole, 303 F.3d at 1111. In any event, the Court notes that, based on the record presented, there is an insufficient basis to sustain a finding of purposeful direction.

1  ChemRisk office in Ontario so that the company could compete in the "highly competitive
2  Canadian scientific market." Compl. ¶ 11. The job offers extended to Defendants
3  contemplated that they would set up an office, hire staff and develop a long-range business
4  plan for ChemRisk in Guelph, Ontario. Compl. ¶¶ 12-13; Scobie Decl. Ex. A at 1-2;
5  Marwood Decl. Ex. A at 1-2. Since Defendants resided in Canada, ChemRisk specifically
6  instructed Defendants to work from their respective homes in Ontario until such time as the
7  office in Ontario was "up and running." Scobie Decl. Ex. A at 1-2; Marwood Decl. Ex. A
8  at 1-2. Moreover, the injury claimed by ChemRisk occurred in Canada. Compl. ¶ 17.

9  ChemRisk largely ignores the lack of any meaningful nexus between the activities of
10 Defendants and California, and instead, attempts to analogize the facts of this action to
11 Burger King. In that case, two Michigan residents had entered into a long-term, twenty-
12 year franchise agreement with Burger King, a Florida corporation, to operate a Burger King
13 restaurant in Michigan. The agreements provided that the franchise relationship was
14 established in Miami, Florida, and governed by Florida law, and specified that the payment
15 of all required monthly fees and all relevant notices were to be sent to Burger King's
16 headquarters in Miami. The Miami headquarters set policy for the franchisees and worked
17 directly with them to resolve major problems, though the day-to-day monitoring of the
18 franchisees' operations was conducted through a district office in Michigan.

19 When the franchisees fell behind in their monthly payments, Burger King brought a
20 diversity action in a federal district court in Florida. The franchisees argued that because
21 they were Michigan residents and because Burger King's claims did not arise within
22 Florida, the district court lacked personal jurisdiction over them. The Supreme Court
23 disagreed. Based on the facts presented and the nature of the parties' long-term
24 relationship, the Supreme Court held that a Florida federal court had personal jurisdiction
25 over the nonresident franchisees. The Court explained that the franchisees planned a
26 "substantial and continuing relationship," id. at 487, with Burger King's office in Florida
27 by entering into a "carefully structured 20-year relationship that envisioned continuing and
28 wide-reaching contacts with Burger King in Florida," id. at 480. In addition, the Court

**1** found that the franchise agreement's Florida choice-of-law provision reinforced the
**2** franchisee's "deliberate affiliation" with Florida.  Id. at 482.

**3** ChemRisk argues that the facts of this case are analogous to those presented in
**4** Burger King in four respects.  Pl.'s Opp'n at 6.  First, it claims that as in Burger King, "the
**5** Agreements" allegedly forming the basis of this action contain a California choice-of-law
**6** clause.  Id.  ChemRisk misstates the record.  Although the Employee Proprietary
**7** Information Agreement contains such a clause, *the offer letters*—which set forth the details
**8** of the employment relationship between ChemRisk and Defendants and which play a
**9** central role in the instant claims—*do not*.[4]  ChemRisk fails to acknowledge this critical
**10** distinction.  Moreover, Burger King expressly recognizes that the existence of a choice-of-
**11** law provision "standing alone would be insufficient to confer jurisdiction."  471 U.S. at
**12** 482.  Such a provision is germane only when other compelling factors showing purposeful
**13** availment, such as the parties' ongoing relationship in the forum state, which is absent here.
**14** Id.

**15** Second, ChemRisk argues that like the franchisees in Burger King, all consulting
**16** fees generated by ChemRisk Canada were paid to ChemRisk in San Francisco.  Pl.'s Opp'n
**17** at 6.  This argument also misses the mark.  In Burger King, the franchisees paid fees due
**18** under the franchise agreement directly to Burger King at its headquarters in Miami.  471
**19** U.S. at 482.  This fact was deemed significant because Burger King's claims were based on
**20** the franchisee's failure to tender fees as required, and because it underscored that Miami
**21** was the locus of the franchise relationship.  Id.  In contrast, in this case there was no direct
**22** payment by Defendants to ChemRisk pursuant to any agreement.  Rather, the fees paid to
**23** ChemRisk in San Francisco were paid by third-party clients of ChemRisk Canada.

**24**

---

**25** [4] Though the offer letters do not contain an express choice-of-law clause, they indicate that Defendants' employment would be governed by Canadian law.  For example,
**26** the letters confirm that Defendants would be eligible for the same benefits provided to ChemRisk's employees, but that the provision of such benefits "will be in compliance with
**27** *Canadian standard practice and law*."  E.g., Marwood Decl. Ex. A at 3 (emphasis added). In addition, Defendants were instructed to provide "documentary evidence of [their]
**28** identity and eligibility *for employment in Canada....*"  Id. (emphasis added).

Garavaglia Decl. ¶ 4; Compl. ¶ 16.  Indeed, as between the parties, the amounts paid under the terms of the offer letters were made to Defendants in Canada by ChemRisk Canada's ADP payroll account—and not ChemRisk's bank account in San Francisco.  Garavaglia Decl. ¶ 3.

Third, ChemRisk emphasizes that "much Like ChemRisk's San Francisco headquarters, Burger King's Florida headquarters was responsible for setting corporate policies and procedures."  Pl.'s Opp'n at 6.   In Burger King, the Court focused on the fact that the franchise agreements in dispute required the franchisees to submit to the Company's "exacting regulation of virtually every conceivable aspect of their operations." 471 U.S. at 465.  Here, there is no allegation or showing that the corporate policies and procedures vaguely referenced by ChemRisk dictated the manner in which Defendants operated the Guelph office. Though the offer letters specified that the office was to be set up in consultation with ChemRisk personnel in San Francisco, Defendants were vested with considerable discretion in, and were responsible for, independently setting up and operating ChemRisk Canada.  Compl. ¶ 11-15; Marwood Decl. Ex. A at 1-2; Scobie Decl. Ex. A at 1-2, Chappel Mot. Ex. A at 1-2.  This further distinguishes the instant action from Burger King.

Finally, ChemRisk contends that "[j]ust as in Burger King, Defendants here sought out and accepted the benefits of being associated with a California company."  Pl.'s Opp'n at 6.  It is well settled, however, that "an individual's contract with an out-of-state party alone" does not "automatically establish sufficient minimum contacts in the other party's home forum."  Burger King, 471 U.S. at 478; Roth v. Garcia Marquez, 942 F.2d 617, 621 (9th Cir. 1991) ("the existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over the nonresident.").  While Defendants may have been the parties to initiate contact, there is no showing that they traveled to California or executed any agreements here.  See Schwarzenegger, 374 F.3d at 802 (noting that a showing of purposeful availment "typically consists of evidence of the defendant's actions *in the forum*, such as executing or performing a contract there.") (emphasis added); see also

Sher v. Johnson, 911 F.2d 1357, 1366 (9th Cir. 1990) (telephone calls and letters sent to plaintiff in forum state "do not constitute purposeful availment of the privilege of conducting activities in California.").

Moreover, the relationship between Burger King and the franchisee defendants in Burger King is fundamentally different that the relationship between ChemRisk and Defendants herein. Burger King involved a dispute over a franchise agreement under which the Company "licenses its franchisees to use its trademarks and service marks for a period of 20 years and leases standardized restaurant facilities to them for the same term" and allows them to utilize the Company's "standards, specifications, procedures and methods for operating a Burger King restaurant." 471 U.S. at 464-65. In this case, ChemRisk agreed to hire Defendants as employees for the purposes of opening and developing a ChemRisk office in Canada to develop business in the Canadian market. As such, unlike Burger King, the focus of the parties' relationship in this lawsuit is where the Defendants are located, as opposed to where ChemRisk is based.

In sum, the facts of this case do not support the conclusion that Defendants purposefully availed themselves of the benefits and protection of California law.[5]

### 2. Forum-Related Activities

Even if ChemRisk could meet the purposeful availment prong of the test for personal jurisdiction, it has failed to separately establish that each of its claims arise out of Defendants' forum-related contacts. See Ballard, 65 F.3d at 1500. In this regard, the Ninth Circuit employs a "but for" test; that is, the plaintiff must show that "but for" defendant's individual contacts with this forum, plaintiff's claims would not have arisen. Id. Here,

---

[5] ChemRisk also cites Hirsch v. Blue Cross, Blue Shield of Kansas, 800 F.2d 1474 (9th Cir. 1986) for the proposition that a defendant's lack of physical presence in the forum state for not foreclose a finding of purposeful availment. Pl.'s Opp'n at 7. In Hirsch, insureds living in California sued their insurer for breach of contract. The Ninth Circuit concluded that by "voluntarily and knowingly obligating itself to provide insurance coverage to [California residents]," the insurance company "purposefully availed itself of the benefits and protections of that forum." Id. at 1480. This case involves a factually distinguishable situation where the parties' relationship centered on the development of a business office in a foreign country, not the failure to provide insurance benefits.

1  ChemRisk has made no showing that Defendants had any contact with the forum, or that
2  such contact gave rise to its claims. See Pl.'s Opp'n at 5-7. ChemRisk's failure to make
3  such a showing, standing alone, independently warrants dismissal of the action.

### 3. Reasonableness

"The bare existence of minimum contacts is not sufficient to allow a court to exercise personal jurisdiction over a defendant." Doe, 248 F.3d at 925. The court must also be convinced that the exercise of jurisdiction is reasonable. Id. Where, as here, the plaintiff's showing is insufficient to establish either purposeful availment or that the claims arise from defendant's forum-related activities, "the Court need not reach the third prong of the specific jurisdiction test." Id. Nevertheless, even if did, the Court is persuaded by Defendants' showing of unreasonableness.

The reasonableness determination requires the consideration of a number of factors: (1) the extent of the defendants' purposeful interjection into the forum state; (2) the burden on the defendant in defending in the forum; (3) the extent of the conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. Dole, 303 F.3d at 1114. No one factor is dispositive; the court must balance all seven of them. Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1488 (9th Cir. 1993).

On balance, the Court finds that the bulk of these factors weigh in Defendants' favor. First, Defendants have not purposefully interjected themselves into California for the same reasons that ChemRisk cannot show purposeful availment. See Roth, 942 F.2d at 623 ("In light of the first prong of purposeful availment, analysis of this first factor in the third prong would be redundant."). Second, the fact that defendants are foreign domiciles weighs heavily in Defendants' favor. See Asahi, 480 U.S. at 114; Paccar Intern., Inc. v. Commercial Bank of Kuwait, S.A.K., 757 F.2d 1058, 1065 (9th Cir. 1985). Third, "[w]here, as here, Defendants are from a foreign nation rather than another state, the

sovereignty barrier is high and undermines the reasonableness of personal jurisdiction." Amoco Egypt Oil, Co. v. Leonis Nay, Co., Inc., 1 F.3d 848, 852 (9th Cir. 1993). Fourth, while California has an interest in the instant tort claims, it is a "toss up" as to whether California has an interest in adjudicating a contract case. See Roth, 942 F.2d at 624. Fifth, the most efficient forum for resolving this dispute is in Canada, which, according to the Complaint, see Compl. ¶ 17, is where the alleged injury occurred. See Amoco, 1 F.3d at 852 ("The site where the injury occurred and where evidence is located usually will be the most efficient forum.") (internal quotations omitted). Sixth, while California may be convenient for ChemRisk since it is based in this District, ChemRisk does not dispute that most of the relevant witnesses and evidence are located in Canada. Id. Finally, ChemRisk has made no showing that there are no available, alternative forums. See Glencore, 284 F.3d at 1126 ("[Plaintiff] bears the burden of proving the unavailability of an alternative forum."). In sum, the foregoing factors, especially when considered in tandem with the heightened standard recognized in Asahi and Rano, demonstrates that the assertion of personal jurisdiction over them would be unreasonable.

### C.   PERSONAL JURISDICTION AS TO CHAPPEL

Chappel did not join in the instant motion and currently is in default.[6] That fact is of little moment, however. ChemRisk cannot obtain a default judgment against Chappel if personal jurisdiction is lacking. In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999) ("A judgment entered without personal jurisdiction over the parties is void."); Walker & Zanger (West Coast) Ltd. v. Stone Design S.A., 4 F. Supp. 2d 931, 934 (C.D. Cal. 1997) ("where the court lacked personal jurisdiction over the defendant or the requirements for effective services were not satisfied, the default judgment is void and must be vacated."). As such, a court has an affirmative duty to consider sua sponte whether it has personal jurisdiction over a defaulted defendant. In re Tuli, 172 F.3d at 712.

---

[6] After his default was entered, Chappel and the other Defendants filed a pro se motion to dismiss for lack of personal jurisdiction and improper venue. Dkt. 8. After the case was reassigned to this Court, Chappel did not renotice his motion, however.

Here, Chappel is identically situated to Scobie and Marwood, and the Court's analysis of the arguments and issues presented in the instant motion papers apply equally to him. Therefore, the Court finds good cause to vacate the Clerk's entry of default and dismisses the action as to Chappel for the same reasons as above. See Silverton v. Department of Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where the claims against such defendants are integrally related."); see also Fed. R. Civ. P. 55(c) ("For good cause shown the court may set aside an entry of default.").

## IV. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED THAT Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED. Defendants' alternative motion to dismiss for failure to state a claim is DENIED as moot. This Order terminates Docket 7 and 18. The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated: May 11, 2011

SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

CHEMRISK, LLC et al,

        Plaintiff,

  v.

CHAPPEL et al,

        Defendant.
                                         /

Case Number: CV10-05766 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on May 12, 2011, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Christopher Marwood
291 James Street
Carleton Place, ON K7C 3G7

Hugh Scobie
116 Marcy Crescent
Cambridge, ON N3C 4H6

Mark J. Chappel
10 Crane Avenue
Guelph, ON N1G 2R2

Dated: May 12, 2011

                                      Richard W. Wieking, Clerk

                                                  By: LISA R CLARK, Deputy Clerk